Hudson Specialty Ins. Co. v Haley & Aldrich, Inc. (2018 NY Slip Op 01708)





Hudson Specialty Ins. Co. v Haley & Aldrich, Inc.


2018 NY Slip Op 01708


Decided on March 16, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, CARNI, DEJOSEPH, AND WINSLOW, JJ.


42 CA 17-00992

[*1]HUDSON SPECIALTY INSURANCE COMPANY, AND ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, AS SUBROGEES OF SPECIALTY TECHNICAL CONSULTANTS, INC., PLAINTIFFS-RESPONDENTS,
v
HALEY & ALDRICH, INC. AND COVERIS, INC., DEFENDANTS-APPELLANTS. (APPEAL NO. 2.) 






DONOVAN HATEM LLP, NEW YORK CITY (SCOTT K. WINIKOW OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
BARCLAY DAMON LLP, ROCHESTER (DENNIS R. MCCOY OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS. 


 Appeal from a judgment of the Supreme Court, Erie County (Timothy J. Walker, A.J.), entered January 23, 2017. The judgment awarded plaintiffs the sum of $1,103,071.93 as against defendants. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff insurance companies, as subrogees of their insured, Specialty Technical Consultants, Inc. (STC), commenced this action seeking common-law and contractual indemnification from defendants, Haley & Aldrich, Inc. (H & A) and CoVeris, Inc. (CoVeris). CoVeris, which was a subsidiary of H & A and later merged with H & A, conducted environmental, health, and safety audits for businesses. In April 2006, Cooper Cameron Corporation (Cameron) contracted with CoVeris for it to conduct environmental, health and safety audits of Cameron's facilities, including one in Buffalo. Two CoVeris employees and one other person hired by CoVeris examined the Buffalo facility for four days in June 2006 and prepared a draft audit report. In July 2006, STC purchased from H & A certain assets of CoVeris, including the contract with Cameron, and issued a final audit report to Cameron. Neither the draft nor the final audit report made any mention of a room referred to as the plenum room at Cameron's Buffalo facility. The plenum room had pipes that took air out of the room and fed it to compressors during testing. In November 2008, an employee of Cameron died of positional asphyxiation at work when he was sucked up against and partially drawn into an air intake pipe in the plenum room. The employee's estate sued STC and others and, as against STC, the estate alleged that it conducted a deficient audit inasmuch as it failed to inspect the plenum room and warn Cameron of the hazardous conditions that existed there.
Contrary to defendants' contention, Supreme Court properly granted plaintiffs' motion for summary judgment on the common-law indemnification causes of action. Plaintiffs met their initial burden of establishing their entitlement to common-law indemnification inasmuch as STC was compelled to pay for the wrong of CoVeris (see D'Ambrosio v City of New York, 55 NY2d 454, 460 [1982]; Genesee/Wyoming YMCA v Bovis Lend Lease LMB, Inc., 98 AD3d 1242, 1244 [4th Dept 2012]). As explained above, CoVeris employees conducted the audit of the Buffalo facility and prepared the draft audit report before the Cameron contract was transferred to STC. Although STC issued a final audit report to Cameron, the final audit report was based on the findings within the draft audit report prepared by the CoVeris auditors. The court properly concluded that the draft and final audit reports were substantially the same and that where they [*2]differed had no bearing on the allegations of negligence against STC, i.e., the failure to reference the plenum room. STC was not actively at fault because it had no reason to know about the failure to include the plenum room in the draft or final audit report; that was solely the fault of CoVeris, which conducted the audit and prepared the draft audit report.
In opposition to the motion, defendants failed to raise a triable issue of fact. Defendants contend that there is a triable issue whether STC was partially at fault for the deficient audit, which would defeat its claim for common-law indemnification. Defendants rely particularly on the fact that STC either conducted or should have conducted a peer review of the draft audit report before presenting it to Cameron as the final audit report. That contention is without merit. As the court properly determined, even if STC conducted a peer review of the draft audit report, there was no claim that STC should have made any changes to that report. STC had no responsibility for auditing the plenum room and had no reason to include it in the final audit report.
We reject defendants' contention that the court abused its discretion in denying their motion to compel disclosure of plaintiffs' insurance and subrogation claim files or, alternatively, production of a privilege log. Defendants contend that they sought that information to determine the reasonableness of the settlement amount with the employee's estate and the attorneys' fees claimed by plaintiffs. Plaintiffs provided defendants with non-protected documents, such as the deposition transcripts and the trial transcript of the estate's action against STC, and the remaining information sought, i.e., material prepared for litigation, was privileged (see Lamberson v Village of Allegany, 158 AD2d 943, 943 [4th Dept 1990]). Contrary to defendants' contention, they did not show that there was an "at issue" waiver here (see Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust, 43 AD3d 56, 63-66 [1st Dept 2007]). The "nonprivileged material [received by defendants] provides a more-than-ample basis for the parties to litigate the reasonableness—an objective standard—of [STC's] decision to settle the . . . action . . . ; of the amount it paid to settle the case; and of the amount it spent on its defense" (id. at 65). We also reject defendants' contention regarding the amount awarded by the court. Defendants' further contention that the justice presiding over the case should have recused himself is not preserved for our review (see Matter of Curry v Reese, 145 AD3d 1475, 1476 [4th Dept 2016]).
In light of our determination, we do not address defendants' remaining contentions.
Entered: March 16, 2018
Mark W. Bennett
Clerk of the Court